[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife commenced this action for a dissolution of the parties' marriage by complaint returnable March 16, 1993. She alleges that the marriage has broken down irretrievably and seeks alimony, a property settlement and other relief. The defendant husband admitted in his answer that the marriage had broken down irretrievably, and in his cross complaint, seeks a dissolution of the marriage on the ground of irretrievable breakdown. He also seeks an equitable division of the marital assets and other relief. Both parties were represented by counsel throughout the proceedings, including trial.
At the hearing, the parties testified, filed financial affidavits, submitted proposed written claims for relief and introduced documentary materials into evidence. A bank employee called by the plaintiff, and a licensed land surveyor called by the defendant, also testified. At the conclusion of the hearing on March 11, 1994, the parties were granted until April 15, 1994 to report to the court on proposed property division lines on real estate owned by the parties at Nos. 102 and 98 Moxley Road, Montville, Connecticut (Uncasville) and allocation of personal property, and the court retained jurisdiction on this issue. The court advised that it would declare the trial completed as of April 15, 1994.
From the evidence, the court finds as follows. The plaintiff wife, whose birth name was Luz Helena Ruiz Gonzales, married the defendant husband on May 30, 1964 in Envigado, Antioquia, Columbia, in South America, by proxy.[1]
She has resided continuously in this state for at least one year before the date of the complaint, February 18, 1993. All statutory stays have expired and the court has jurisdiction. The parties have four children, all of whom have reached their majority and are issue of the marriage. No other minor children were born to the wife since the date of the marriage, and neither party is a recipient of public assistance.
The plaintiff is 49 years of age and suffers from thyroid problems for which she takes medication daily. She also takes medication for various allergies. She still suffers CT Page 3973 from an injury to her right arm inflicted upon her by the defendant, which has affected her ability to work as an assistant cook and compelled her to transfer to a job involving no heavy lifting. She first came to the United States after her first child was born, and except for a short period when the parties resided together in Columbia, while the defendant operated a business there, she has resided here throughout the marriage. She has the equivalent of a high school diploma and speaks english, although not as fluently as the defendant.
The plaintiff now works full-time for the State of Connecticut as a `maintainer I' at the state hospital. She earns $402[2] per week gross and $284 per week net, and prepares salads and desserts, cleans, serves patients and the like, and has held her present job for about five years. Her pension benefits are not vested. Prior to this employment, she held a succession of part-time jobs over a seven year period as a cook. She also sold Avon products door-to-door, and worked part-time in her husband's ornamental welding business.
The plaintiff wife was the primary caretaker of the children and the primary homemaker throughout the marriage. She did the major portion of the household cooking, cleaning, shopping and laundry.
The husband is 51 years old and has the equivalent of an eighth grade academic education; he also graduated from a trade school. He first came to this country on a tourist visa, and stayed for about two years. Eventually, after a stay in Columbia during which he tried to operate a business with his father, he removed his family to the United States. Except for periodic visits to Columbia to visit his family, he has resided in Connecticut continuously.
Until his discharge some months ago, he has been employed almost continuously throughout the marriage. First, as a truck driver for Air Freight; then, as a welder-millwright for Continental Can Co., and finally as a welder for Robinson Paper Board Company, where he earned $11-12 per hour, for whom he worked for about 15 years. He also owned and operated an ornamental welding business from the garage located at No. 102 Moxley Road, Montville, (the prior family dwelling) on a part-time basis almost from the beginning of the marriage, except for a period of a few years when he left Robinson to pursue his business full-time. He has generally worked hard and long CT Page 3974 hours, and during the `hay-day' of his welding business he made $1,000 per week. He now collects $306 per week as unemployment benefits, which are due to run out, and claims to earn $50 per week from his welding business.
He sustained a serious head injury in a mugging in the 1970's, which the wife claims altered his personality; he suffers from alcoholism, for which he has been hospitalized on more than one occasion for detoxification. His alcoholism directly led to the loss of his job at Robinson in 1993. He also suffers from the effects of a work-related shoulder injury for which he received a substantial workers' compensation lump sum award. By the terms of that award, he relinquished any right to continuing disability payments. He now claims to be sober for the past several months and attends AA.
This marriage of almost thirty years duration developed cracks in it from about the time of the birth of the parties' second child. The' cause of this can be laid to the defendant's drinking. However, the parties stayed together and continued to muddle along. In 1982, the husband committed an assault upon the wife, striking her with the stock of a shotgun. The defendant acted aggressively toward her, intimidated her, and threatened her, causing her to leave the home with the children a number of times. In 1985, he hit her with a bottle, causing a fracture in her arm, from which she still has problems. He was arrested and went through the family violence education program. A number of separations occurred and protective orders issued. It is unnecessary to further detail the other acts committed by the husband. Suffice it to say, the marriage of the parties has clearly broken down, and from the abundance of credible evidence, the court concludes that the lion's share of the responsibility for that breakdown must be borne by the defendant.
The parties have acquired two parcels of real estate both in Montville; the first, No. 102 Moxley Road, is a single-family dwelling on a trapezoidally shaped lot of about 0.3 acre, and includes the garage in which the defendant conducts his welding business. This property is in a residential zone, and the business is a legal non-conforming use. The parties originally occupied this property as tenants, and by using some of the rental payments toward its purchase price, they were eventually able to buy it. It is valued at $98,000, and has a first mortgage of $82,000, leaving an equity of $16,000. The CT Page 3975 second parcel, No. 98 Moxley Road, is also a single-family dwelling, on a parcel of land of about 9.87 acres. The first parcel, which has road frontage, is surrounded on three sides by the second. The second parcel was purchased and a `prefabricated' type house built on it by mortgaging the first parcel for $90,000. The parties then moved into No. 98 Moxley Road, and rented No. 102 to tenants for a time. No. 98 is valued at $126,000 and is mortgage free, but is encumbered by a judgment lien securing a judgment in the amount of $4,600 obtained by one Peroza against the husband, and past due taxes of about $2,000, leaving an equity of $119,400. The wife resides in No. 98, the husband in No. 102, and mutual restraining orders were issued prohibiting each to go upon the other's premises. Title to No. 98 is solely in the defendant, title to No. 102 is jointly held.
The other assets owned by the parties include: wife's bank accounts of $275, Sears stock of $180, and her Aetna 401K plan of $7,400. The husband owns antique automobiles worth $6,500, welding tools and equipment worth $3,500,[3] four life insurance policies with cash values totalling $11,800, and a fractional interest worth about $4,000 in his deceased father's family home in Medellin, Columbia. The Columbia property was not shown on his financial affidavit, and his life insurance policies were undervalued by $9,800. This omission and misstatement are not condoned.
During 1993, the defendant received over $40,000 net after attorney's fees and expenses from the settlement of his worker's compensation claim. These funds, plus $10,000 which the defendant claims he borrowed from his brother in the fall of 1993, no longer exist. Aside from a few thousand dollars he expended for his daughter Sonia's wedding and $3,000 for his prior attorney, he claims the balance went in gambling losses at the local casino and living expenses. The court disregards and does not consider the claim that $13,000 in cash and a gold bracelet were stolen from the defendant's strong box, as the evidence on this is questionable.
The court also concludes from the evidence that while the defendant's monetary contributions to the parties' marriage greatly outweighed that of the plaintiff, her nonmonetary contributions greatly outweighed his. In sum, their contributions, monetary and nonmonetary, are in balance. The court also finds that the husband's employability, vocational CT Page 3976 skills and earning capacity, despite his drinking and shoulder problems, are greater than that of the wife, and hence he appears to have a greater opportunity than she does to acquire capital assets and income in the future. The court also notes that the husband's self destructive activities in gambling away or otherwise dissipating a very substantial sum in excess of $40,000, and losing his job through his poor attendance, worsened the parties' financial condition appreciably, and this ought to be accounted for in the distribution of the parties' assets.
The court has considered all of the statutory criteria in General Statutes 46b-81 and 46b-82 in the light of the evidence and foregoing findings, and orders that:
A decree dissolving the marriage on the ground of irretrievable breakdown shall enter.
The defendant shall transfer all his right, title and interest in and to the premises known as No. 98 Moxley Road, Montville, Connecticut to the plaintiff, subject to all encumbrances thereon, including the Pedroza lien, which she shall pay and save him harmless thereof.
The plaintiff shall transfer all her right, title and interest in and to the premises known as No. 102 Moxley Road, Montville, Connecticut to the defendant, subject to all encumbrances thereon, which he shall pay and save her harmless therefrom.
The transfers shall be by quitclaim deed, to be completed within thirty days hereof, and each shall have exclusive possession of the property assigned to him or her herein. Each is permanently enjoined from entering upon the other's premises.
The plaintiff shall take, have and own, free of any claims of the defendant, the following: her 1993 Nissan car, subject to the loan thereon where she shall pay and save him harmless as below stated, her bank accounts, Sears stock, the Aetna 401K plan Metropolitan Life Insurance policy No. 706702710M, with a cash value of $3,043, her Aetna term life insurance policy, and her retirement plan.
The defendant shall take, have and own, free of any CT Page 3977 claims of the plaintiff, the following: his 1991 Ford truck, subject to the loan thereon which he shall pay and save her harmless therefrom, the antique cars, the other three life insurance policies and the cash values thereof, his ornamental welding business, and the equipment, tools and inventory belonging thereto; and, his interests in the real property in Columbia. He shall also have the Honda generator, the torch hose, hole digger and steel bar, bench wood saw, 3/8 Milwaukee variable speed drill and socket wrench set. The court makes no orders with respect to other tangible personal property as counsel and the parties advised the court that they had reached an agreement on its distribution.
No alimony is awarded to either party, and each is ordered to pay his or her own counsel fees.
The defendant shall be allowed to continue his coverage under the plaintiff's job-related health and medical insurance for the statutory period under applicable law at his expense, and the wife shall cooperate in this claim.
Each shall pay the liabilities shown on Schedule 3 of his or her financial affidavit (excepting the Peroza lien, which the wife shall pay) and save the other harmless therefrom.
All transfers of personal property and instruments or documents required to effectuate the orders herein shall be completed and exchanged within thirty days hereof.
Teller, J.